IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SKIPPER MARINE OF
MADISON, INC.,

                Plaintiff,

    v.                                                      OPINION and ORDER

2019 VR5 BAYLINER,                                      23-cv-516-wmc
ID #014883 BL 0449,
HULL #BLBX2536J819,

                *In Rem* Defendant.

---

Plaintiff Skipper Marine of Madison, Inc. invokes this court's admiralty jurisdiction under 28 U.S.C. § 1333 and 46 U.S.C. §§ 31341–31343, to enforce a maritime lien against *in rem* defendant -- a vessel identified as 2019 VR5 Bayliner, ID #014883 BL 0449, Hull #BLBX2536J819 (the "Vessel) -- for non-payment of necessary services furnished at the request of the Vessel's owner, Robert M. Turner. (Dkt. #1.) Turner has not appeared, but Summit Credit Union ("Summit") has filed a verified statement of interest, based on its own lien on the Vessel's title through the State of Wisconsin Department of Natural Resources. (Dkt. #11.)

Summit has now filed a motion to dismiss Skipper Marine's complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) (dkt #14), to which Skipper Marine has countered with a motion to dismiss Summit's claim of interest under the same federal rule for lack of standing (dkt. #16). After considering all of the pleadings and the applicable law, the court will deny Summit's motion but grant Skipper Marine's motion to dismiss Summit's claim of interest.

ALLEGATIONS OF FACT[1]

Skipper Marine is a boat marina and port located in Madison, Wisconsin. It also conducts boat sales and provides both boat repair and storage. Turner, who resides in Columbus, Wisconsin, authorized Skipper Marine to procure "necessaries" for maintaining the Vessel between April 16, 2019, and October 17, 2022. Consistent with the terms of that agreement, Skipper Marine provided the following necessaries: "supplies, ship stores, seasonal drystack, seasonal storage and trailer storage, temporary slip, repairs and associated services, together with storage at a reasonable rate of $35 per diem[.]" In furnishing these necessaries, which were required to maintain the Vessel in "water worthy condition," Skipper Marine relied on "the credit of defendant Vessel."

Turner was current on his account with Skipper Marine until July 2020, when he damaged the Vessel's engine. He then stopped making payments. On March 20, 2023, Skipper Marine submitted a "demand for payment" in the total amount of $9,906.27 to Turner, comprising storage costs at the rate of $35 per diem or $4,900.00 at that time, plus $5,006.26 in other necessaries. To date, no payment has been received from Turner.

On August 8, 2023, Skipper Marine filed this *in rem* action against the Vessel under Federal Rule of Civil Procedure 9(h) and 28 U.S.C. § 1333(1), which vests district courts with "original jurisdiction, exclusive of the courts of the States," over "[a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." Specifically, Skipper Marine claims that supplying the

---

[1] Unless otherwise indicated, the facts in this section are taken from the complaint, the attached exhibits, and Summit's verified statement of interest. (Dkt. #1, Dkt. #1-1, Dkt. #11.)

necessaries described above falls within the meaning of the Commercial Instruments and Maritime Liens Act ("CIMLA"), 46 U.S.C. § 31342(a)(1).[2] Under this statute, "a person providing necessaries to a vessel on the order of the owner . . . has a maritime lien on the vessel." *Id*. The statute also authorizes the holder of a maritime lien to bring a civil action *in rem* to enforce that lien in federal district court. *Id*. at § 31342(a)(2).

In addition to the sum of $9,906.27 due as of March 20, 2023, Skipper Marine claims that it is owed additional storage fees at the rate of $35 per day to the date of the sale of the Vessel in this action. Thus, Skipper Marine seeks a judgment *in rem* based on its maritime lien on the Vessel and the amount of its claim, with interest and costs, along with an order for the Vessel to be sold and the proceeds of that sale to be paid to satisfy its claim.

At Skipper Marine's request, the court has already issued a "warrant for maritime arrest," under which the United States Marshal's Service proceeded to seize the Vessel. (Dkt. ##5-7.) The court advised any party claiming an interest in the seized Vessel of the right to a hearing, at which the plaintiff would be required to show cause why the arrest should not be vacated or other relief granted. (Dkt. #5.) The arrest warrant was served on Turner, as the identified owner of the Vessel. (Dkt. #8.) The warrant was also served

---

[2] Before United States Code Title 46 was recodified in 1989, the portion of CIMLA governing maritime liens, 46 U.S.C. §§ 31341–31343, was known as the Federal Maritime Liens Act ("FMLA"). *Ceres Marine Terminals, Inc. v. M/V Harmen Oldendorff*, 913 F. Supp. 919, 922 n.2 (D. Md. 1995). Some judicial decisions continue to refer to these statutes as the FMLA in cases involving maritime liens, while others refer to CIMLA. *See Chesapeake Harbour Marina, Inc. v. M/V Southern Charm*, No. 20-2770, 2021 WL 1294096, at *4 n.4 (D. Md. Apr. 7, 2021) (collecting cases reflecting examples of both).

on Summit, as a credit union having an identified "security interest in the Vessel." (Dkt. #12.)

As noted, Turner has yet to file an answer or otherwise appear in this case. However, Summit has filed a verified statement of interest in the Vessel under the terms of a "Consumer Simple Interest Installment Sale and Security Agreement" that Turner executed on March 29, 2019, to finance the Vessel's purchase.[3] After Turner defaulted on his payments due under the Security Agreement, Summit also filed a lien on the Vessel's title through the Wisconsin Department of Natural Resources. Because that lien remains in effect, Summit contends that it has "an interest in, and a right to the Vessel under Wis. Stat. §§ 409.607 and .609," which govern collection and enforcement by a secured party.

Also as noted, Summit subsequently filed a motion to dismiss Skipper Marine's complaint under Rule 12(b)(1), arguing that the court lacks subject matter jurisdiction under the admiralty statute, 28 U.S.C. § 1333. Specifically, Summit contends the contract between Turner and Skipper Marine was not "wholly maritime in nature." (Dkt. #15, at 4-5.) Summit further argues that the Vessel has been a "dead ship" since its engine was removed in December 2020, which is no longer subject to admiralty jurisdiction. (*Id*. at 5-6.) In response, Skipper Marine filed its own motion to dismiss under Rule 12(b)(1),

---

[3] Summit has filed its verified statement of interest under Fed. R. Civ. P. Rule C(6) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. Rule C(6)(a)(ii) directs "a person who asserts a right of possession or any ownership interest" in property that is the subject of an *in rem* action to file a verified statement describing "the interest in the property that supports the person's demand for its restitution or right to defend the action." The purpose behind Rule C(6) "is 'to inform the court that there is a claimant to the property who wants it back and intends to defend it.'" *United States v. Real Property*, 135 F.3d 1312, 1317 (9th Cir. 1998) (citing *United States v. Beechcraft Queen Airplane*, 789 F.2d 627, 629 (8th Cir. 1986)).

arguing that Summit, as a state-law lien holder, has no *in rem* claim against the Vessel under maritime law and, therefore, lacks standing to assert any interest in this proceeding. (Dkt. #17, at 2-4.)

OPINION

Summit's Rule 12(b)(1) motion challenges this court's subject matter jurisdictional over this lawsuit. Because this court is a court "of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute,'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Amer.*, 511 U.S. 375, 377 (1994)), Summit's motion must be addressed first. *See Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 278 (7th Cir. 2020) (standing is a threshold requirement for the court to exercise subject matter jurisdiction). Moreover, as the party seeking a federal forum, Skipper Marine bears the burden of establishing this court's authority to hear the case. *Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1244 (7th Cir. 2021). When ruling on a motion to dismiss for lack of subject matter jurisdiction, courts accept as true all facts in the complaint, drawing all reasonable inferences in the plaintiff's favor. *See Sykes v. Cook Cnty. Circuit Court Probate Div.*, 837 F.3d 736, 739 (7th Cir. 2016). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

**A. Admiralty Jurisdiction Over Maritime Liens**

As already noted, Skipper Marine seeks to enforce a maritime lien through an *in rem* action under 46 U.S.C. § 31342 against the Vessel for "necessaries" furnished at the request of the Vessel's owner. Federal courts have subject matter jurisdiction to hear claims to enforce a maritime lien under 28 U.S.C. § 1333(1). *See Minott v. M/Y Brunello,* 891 F.3d 1277, 1284 (11th Cir. 2018) ("Federal district courts obtain *in rem* jurisdiction over a vessel when a maritime lien attaches to it."); *Ventura Packers, Inc. v. F/V Jeanine Kathleen*, 305 F.3d 913, 917-19 (9th Cir. 2002) (holding that 46 U.S.C. § 31342 affords an independent statutory basis for admiralty jurisdiction to enforce a maritime lien for necessaries *in rem*).

Nevertheless, Summit argues that Skipper Marine is not entitled to avail itself of this court's admiralty jurisdiction because at least some of the services it provided the Vessel do not qualify as necessaries subject to a maritime lien. (Dkt. #15, at 4.) The argument is unavailing. While not defining "necessaries," CIMLA furnishes an illustrative list, including: "repairs, supplies, towage, *and* the use of a dry dock or marine railway." 46 U.S.C. § 31301(4) (emphasis added). Moreover, courts have given the term necessaries a "broad meaning," including "most goods or services that are useful to the vessel, keep her out of danger, and enable her to perform her particular function." *Martin Energy Svcs., LLC v. Bourbon Petrel M/V*, 962 F.3d 827, 831 (5th Cir. 2020) (citations and internal quotation marks omitted). In particular, courts have repeatedly recognized that storage fees fit within the definition of necessaries in the context of maritime liens. *E.g., Am. E. Dev. Corp. v. Everglades Marina, Inc.*, 608 F.2d 123, 125 (5th Cir. 1979) (collecting cases); *Naval Logistic, Inc. v. A 58' Montery Motor Vessel*, No. 22-cv-22539, 2024 WL 1286259, at *2 (S.D. Fla.

6

2024); *Robbie's of Key W. v. M/V Komedy III*, 470 F. Supp. 3d 1264, 1268 (S.D. Fla. 2020); *Marina PDR Operations, LLC v. Master Link Corp.*, 322 F. Supp. 3d 260, 264 (D.P.R. 2018). As a result, Skipper Marine has adequately alleged entitlement to enforcement of a maritime lien for storage fees and other necessaries.

Summit also argues that admiralty jurisdiction is unavailable because the Vessel is currently inoperable and qualifies as a so-called "dead ship" under federal maritime law. (Dkt. #15, at 5.) In support, Summit points to exhibits attached to the complaint that show Skipper Marine "removed and tore down" the Vessel's engine after oil in the engine had "turned into the consistency of peanut butter." (Dkt. #1, Exh. A.) Since that incident, which occurred in December 2020, the Vessel has been in uninterrupted storage without an engine.

To begin, there is an exception in admiralty jurisdiction for dead ships, whose physical characteristics have been so altered as to make its use as waterborne transportation a practical impossibility -- *e.g.*, a large opening has been cut into the hull that renders the vessel incapable of movement over water. *Stewart v. Dutra Const. Co.*, 543 U.S. 481, 494 (2005) (citing *Kathriner v. UNISEA, Inc.*, 975 F.2d 657, 660 (9th Cir. 1992)); *see also Marina Entm't Complex, Inc. v. Hammond Port Auth.*, 842 F. Supp. 367, 370 (N.D. Ind. 1994) (concluding that a Clipper resting in a specially prepared stone bed with natural gas, electrical, and sewage disposal lines running between the ship and shore had been indefinitely withdrawn from navigation and was excluded from admiralty jurisdiction as a dead ship).

For the dead ship doctrine to apply, however, the withdrawal from navigation must be permanent rather than temporary. *In re Complaint of Wepfer Marine, Inc. for Exoneration from or Limitation of Liability*, 344 F. Supp. 2d 120, 1125 (W.D. Tenn. 2004); *see also Colonna's Shipyard, Inc. v. U.S.A.F. Gen. Hoyt S. Vandenberg*, 584 F. Supp. 2d 862, 867 (E.D. Va. 2008) ("A key element in determining whether a watercraft that was indisputably a vessel at some point in the past is now a 'dead ship' is whether such watercraft is permanently withdrawn from navigation."). Vessels that are only temporarily withdrawn from navigation remain subject to admiralty jurisdiction. *Marina Entm't*, 842 F. Supp. at 370.

The pleadings and attached exhibits indicate that removal of the Vessel's engine alone rendered it only temporarily withdrawn from navigation. However, the additional fact that it has now effectively been held in long-term storage by Skipper Marine for more than three and a half years changes the calculus substantially. Indeed, the Vessel has essentially been abandoned by its owner. In this sense, the dead ship doctrine may well apply, and if so, exercise of admiralty jurisdiction by this court would be improper. Despite the burden on plaintiff Skipper Marine to plead sufficient facts to show its *in rem* action to enforce a maritime lien is properly before this court, Summit's motion to dismiss will be denied, but the court will grant Skipper Marine 30 days to file an amended complaint with a supporting brief, alleging additional facts to establish the court's subject matter jurisdiction. In its submission, Skipper Marine must also brief whether the exercise of admiralty jurisdiction here is barred by the fact that Lake Mendota, where Skipper Marine and the Vessel are located, is wholly inside the bowels of the State of Wisconsin and,

therefore, is not a "navigable water" for purposes of 28 U.S.C. § 1333.[4] *See The Rock Island Bridge*, 73 U.S. 213, 216 (1867) ("A maritime lien can only exist upon movable things engaged in navigation, or upon things which are the subjects of commerce on the high seas or navigable waters."); *Inbesa Am., Inc. v. M/V Anglia*, 134 F.3d 1035, 1036 (11th Cir. 1998) (A maritime contract giving rise to a maritime lien must "pertain directly to and be necessary for commerce or navigation upon navigable waters."). Failing that, this matter must be dismissed for lack of subject matter jurisdiction under the court's independent obligation to ensure that jurisdiction exists. *See* Fed. R. Civ. P. 12(h)(3); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (Federal courts have "an independent obligation to determine whether subject matter jurisdiction exists, even in the absence of a challenge from any party.")

B. **Summit's Standing to Assert a Claim**

The requirement of standing is derived from Article III of the Constitution, which limits federal jurisdiction to "Cases" and "Controversies." U.S. Const., Art. III, § 2. Typically, a party seeking to assert a claim in federal court must establish standing by showing "(1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "To meet this burden and to survive a challenge to standing under Rule 12(b)(1), a [party] must plead sufficient

---

[4] Summit raises this issue in its reply brief, noting that Lake Mendota, where Skipper Marine and the Vessel are located, is not designated as a navigable waterway. (Dkt. #19, at 4 & n.1.)

factual allegations, taken as true, that 'plausibly suggest' each of these elements." *Berger v. Nat'l Collegiate Athletic Ass'n*, 843 F.3d 285, 289 (7th Cir. 2016) (quoting *Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015)). Moreover, there must be standing for each asserted claim and for each form of relief sought. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

Summit contends that it has standing because Turner defaulted on his installment loan, giving Summit a right to possess the Vessel as a secured party under Wisconsin law. *See* Wis. Stat. §§ 409.607 and .609. Skipper Marine acknowledges that Summit has an interest in the Vessel to secure a debt owed by Turner under the terms of the loan. However, it argues that any state-law lien is superseded as a matter of law by its maritime lien. *See* 46 U.S.C. § 31307 ("This chapter supersedes any State statute conferring a lien on a vessel to the extent the statute establishes a claim to be enforced by a civil action *in rem* against the vessel for necessaries."); *see also Farwest Steel Corp. v. DeSantis*, 102 Wash. 2d 487, 490, 687 P.2d 207, 209 (1984) (en banc) ("The Federal Maritime Lien Act preempts state lien statutes which propose to create liens enforceable by actions '*in rem* in admiralty against vessels for repairs, supplies, towage, . . . and other necessaries.'").

Skipper Marine explains that a maritime lien differs in character from other ordinary liens, including the state-law lien held by Summit. A maritime lien "is a right in the vessel" that entitles a vessel's creditor to have the vessel sold in order to satisfy an outstanding debt. *Addax Energy SA v. M/V Yasa H. Mulla*, 987 F.3d 80, 86 (4th Cir. 2021). Maritime liens differ from other liens in that a maritime lien is "not simply a security device to be foreclosed if the owner defaults"; rather, a maritime lien converts the vessel itself into the

obligor and allows injured parties to proceed against it directly. *Crimson Yachts v. Betty Lyn II Motor Yacht*, 603 F.3d 864, 868 (11th Cir. 2010) (citing *Amstar Corp. v. S/S ALEXANDROS T.*, 664 F.2d 904, 908-09 (4th Cir. 1981)). "In other words, '[a] maritime lien gives to its holder a property right in a vessel, and the proceeding *in rem* is . . . a means of enforcing the property right.'" *Id.* (citing *Merchants Nat'l Bank v. Dredge Gen. G.L. Gillespie*, 663 F.2d 1338, 1346 (5th Cir. 1981)). "An *in rem* suit against a vessel is . . . distinctively an admiralty proceeding, and is hence within the exclusive province of the federal courts." *Am. Dredging Co. v. Miller*, 510 U.S. 443, 446-47 (1994).

Skipper Marine observes that Summit's interest in the Vessel is not based on a maritime contract nor qualifies as a "preferred ship mortgage" under 46 U.S.C. §§ 31321, 31325(b), which could support an *in rem* claim in admiralty. *E.g., Reedsburg Bank v. Apollo*, 508 F.2d 995, 998 (7th Cir. 1975) (addressing an *in rem* proceeding to foreclose a preferred ship mortgage) (citing *Detroit Trust Co. v. The Barlum*, 293 U.S. 21, 33 (1934)). Because Summit's state-law lien does not meet this criteria, Skipper Marine argues that Summit lacks standing to assert an interest in this *in rem* admiralty action citing *The Lottawanna*, 88 U.S. 558, 583 (1874). In that hoary case, the Supreme Court held that parties with "an ordinary debt not founded on a maritime contract" have "no standing" in a federal court action to enforce a maritime lien.

Summit does not dispute that its lien under state law is subordinate to any *legitimate* maritime lien held by Skipper Marine, although it obviously disputes that maritime jurisdiction exists as already discussed. (Dkt. #20, at 4.) Moreover, even if the Vessel *is* subject to sale under Skipper Marine's maritime lien, Summit claims entitlement to "any

11

surplus proceeds up to the amount of its loan." (*Id*. at 5.) Skipper Marine does not disagree, but nevertheless maintains that Summit still lacks standing to assert this claim *in an in rem action under admiralty jurisdiction*. Because the debt on which Summit's lien is based does not appear "founded on a maritime contract," it appears to lack standing in an *in rem* proceeding involving a vessel under still controlling precedent. *The Lottawanna*, 88 U.S. at 583.

Skipper Marine further points out that a claim for *surplus proceeds* is legally and factually distinct from its *in rem* claim under well-established admiralty law from the Supreme Court, which has explained that "a proceeding *in rem* and a petition for payment of a claim out of proceeds of a sale remaining in the registry are distinct things[.]" *The Willamette Valley*, 76 F. 838, 843 (1896) (citing *The Edith*, 94 U.S. 5223 (1876)); *see also The Ethel V. Stowman,* 16 F. Supp. 540, 541 (D. N.J. 1936) (concluding that a party with a state lien lacks standing to pursue distribution of surplus in the court's registry following the enforcement of a maritime lien).

Assuming Skipper Marine can establish sufficient facts to demonstrate its entitlement to a maritime lien for the costs of necessaries, then Summit's state-law lien for a potential surplus does not appear to be cognizable, at least for enforcement under this court's admiralty jurisdiction. Rather, following a judicial sale in a civil *in rem* action to enforce a maritime lien, all preexisting liens are extinguished, including a possessory common law lien, and the vessel is sold free of those claims. *See* 46 U.S.C. § 31326(a). In that event, Summit would still appear to have a claim to surplus proceeds, if there are any. (Dkt. #20, at 5 n.1.) It is unclear why this court could not exercise supplemental

jurisdiction to vindicate this lesser right to surplus, but the court will await further facts and law from Skipper Marine demonstrating this court's jurisdiction before taking up that issue.

ORDER

IT IS ORDERED that:

1. Interested Party Summit Credit Union's motion to dismiss the complaint for lack of subject matter jurisdiction (dkt. #14) will be DENIED, although Skipper Marine has 30 days to bolster its assertion that maritime law should control here.

2. Plaintiff Skipper Marine of Madison's motion to dismiss Summit Credit Union's claim of interest in the Vessel (dkt. #16) is GRANTED.

Entered this 4th of September, 2024.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge